## WITHERINGTON *v.* HUNTSMAN.

### Opinion delivered January 15, 1898.

SET-OFF—FIRM AND INDIVIDUAL DEBTS.—One who is indebted to a partnership cannot set off against such debt a claim against a member of such firm, without his co-partner's consent. (Page 554.)

SAME.—Where a partner, without his co-partner's assent, undertook to set off his individual debt to another against a debt by the latter to the firm by marking such firm debt paid on the firm books, the latter cannot, after such partner's action has been repudiated by his co-partner, ratify, adopt or confirm such act. (Page 554.)

Appeal from Greene Circuit Court.

FELIX G. TAYLOR, Judge.

*Block & Sullivan*, for appellants.

One partner has no right to use firm assets in the purchase of property for his individual use. 40 Ark. 551; 52 *id.* 556; 85 Ala. 198; 12 Pet. (U. S.) 220; 78 Ia. 617. Proof by mere custom of settling firm debts in this manner is not sufficient. The assent of all the firm is the fact necessary to prove. 17 N. W. 751. No set-off having been pleaded, if appellee could obtain any relief at all, on account of having sold Witherington the lumber, it would have to amount to an accord and satisfaction. For this to be true, there must have been an agreement to settle the firm demand by the partner's purchase. Webster's Dict., verb "Accord;" Parsons, Cont. (7 Ed.) page 686; 81 Ky. 321; 58 Vt. 553; Sand. & H. Dig. § 4447.

*E. F. Brown*, for appellee.

The firm account sued on in this case was paid in lumber, by way of accord and satisfaction, to one of the partners. 2 Pars. Cont. (7 Ed.) p. 686; 4 N. Y. S. 609; 43 Ark. p. 416;

18 Am. & Eng. Enc. Law, p. 159, and cases cited. This was a sufficient payment. 78 Me. 442; 6 Atl. 877; 18 Am. & Eng. Enc. Law, pp. 150, 158 and 186; 9 N. E. 730; 17 N. E. 125; 2 So. 373; 1 Gr. Ev. (14 Ed.) §§ 516 and 526. At the time of settlement and dissolution of the partnership appellee's account stood marked "Paid" on the books. There subsisted no debt from appellee to appellant, and the transfer of accounts did not embrace the old claim. The settlement was valid, and will not be set aside. 2 Bates, Part. § 958; 56 N. W. 730 and 891; 49 N. W. 736; Story, Part. vol. 1, p. 229; Pom. Eq. Jur. § 850; 12 Pac. 81; 16 S. W. 543; 2 Bates, Part. §§ 962, 963. The accord and satisfaction of one partner binds the firm. 2 Greenl. Ev. (14 Ed.) § 480; 2 Black (Ind.) 371; 1 Ill. 107; 14 La. Ann. 681; 4 Minn. 242; 2 Sneed (Tenn.), 526; 1 Wash. (Va.) 77; 4 Binn. (Pa.) 375; Bates, Part. § 383; 30 Conn. 1; 7 Gill (Md.) 49. It was the custom of the firm so to settle debts, and this custom is evidence of authority in this case. 1 Bates, Part., § 382, and cases cited; *ib.* § 427; 18 Ill. 32; 75 Ill. 629; 49 Ind. 521; 39 Iowa, 640; 2 Litt. (Ky.) 41; 22 Me. 184; 21 Md. 538; 39 Md. 613; 106 Mass. 395; 15 Gray, 296; 79 Mo. 293; 16 Mo. App. 97; 5 Wend. 477; 7 Wend. 158; 101 N. Y. 202; 6 Jones (N. C.) 44; 62 Pa. St. 393; 3 Humph. (Tenn.) 597; 2 Head (Tenn.), 197; 12 Heisk. (Tenn.) 629; 27 Am. Rep. 733; 30 Mich. 267. The other partner also ratified the act of Witherington in this case. 1 Bates, Part. § 363; 17 Am. & Eng. Enc. Law, p. 1051. If one of the partners was guilty of fraud on the other, this suit should have been brought in equity by the defrauded partner against the other one. 2 Bates, Part., § 1035; 17 Am. & Eng. Enc. Law, 1247, and cases cited; 20 Pick. 96; 10 Mo. App. 536; 34 N. J. L. 363; 20 Wis. 117; 23 Ala. 558; 87 Ill. 68; 53 Mich. 629.

BATTLE, J. This action was instituted by Witherington & Sims, for the use of W. A. Sims, against W. H. Huntsman, before a justice of the peace, to recover $43, which were alleged to be due and owing plaintiff on account for services rendered. The account was not disputed by the defendant, but he alleged that it had been paid or satisfied. The action was taken by appeal to the Greene circuit court

The issue in the suit was tried by a jury, and the result was a verdict and judgment in favor of the defendant. Plaintiffs appealed.

The undisputed facts, as shown by the evidence adduced in the trial, were substantially as follows: W. T. Witherington and W. A. Sims were physicians and partners in the practice of medicine in Paragould, Ark., and dissolved their partnership in October, 1894. At this time the appellee was indebted to them in the sum of $43. Witherington was indebted to appellee in a sum exceeding $43 for lumber sold to him for his private use and charged to him by appellee. There never has been a settlement of account by the firm and appelleee, or by appellee and Witherington. While Witherington and Sims were partners, neither had authority to pledge the credit of the firm for his own use. When one bought anything from a person who owed them, he had it charged by such person to his own account; and when they and such person settled, they would credit him with the amount of the account, and charge it on the books of the firm to the partner who owed it. Something was said about the custom of the firm to collect debts in property, "when money was not to be had," but, as there was no collection of that kind in this case, it was wholly irrelevant. When the firm dissolved, the partners divided accounts in their favor between themselves. Certain accounts, not including appellee's, were first set apart to Witherington as his portion, and the remainder, without specification of what it consisted, was then set apart to Sims as his part. They agreed that each had collected about the same amount on the indebtedness to the firm; and that their accounts in that respect should be "balanced."

Campbell Bell testified: "In going over the accounts one day, Witherington said he owed appellee more than appellee's account with the firm, and marked the latter paid. Sims was in the office when this occurred, but witness did not know whether he saw or heard this or not." In this instance there was no pretence or claim on the part of Witherington that the account of appellee had been paid in any way except by his own account for lumber, assuming that the latter cancelled the former. There was no evidence tending to show that Sims heard the remark of Witherington, but he testified that he did

not, and did not discover that appellee's account had been marked paid until sometime after the division.

There were five instructions given by the court at the request of appellee, over the objections of the appellant. We will set out only three of them, in order to present the questions of law involved in this appeal. They are as follows:

"No. 1.   You are instructed that one partner has the right to collect, either in money or in property, amounts due the firm, of which he is a member, when it is the custom of such firm to collect in this way.   And if, in this case, you find from the evidence that it is the custom of Witherington & Sims to collect from their patrons debts due the firm in money or property, and you further find that Witherington collected the amount sued for in this case from the defendant before the dissolution of Witherington & Sims, then you will find for the defendant, although you may find that such collection was made by taking lumber from the defendant.

"No. 5.   But if you should find that it was the custom of Witherington & Sims to collect debts due the firm, either in money or property, and to apply the proceeds to their own use, and further find that Witherington collected the claim sued on in this case, in lumber, and applied the same to his own use, before the dissolution of the partnership, and that Sims had knowledge of it, you will find for the defendant.

"No. 3.   The jury are instructed that if they find from the evidence that Witherington, for a valuable consideration, assigned a number of accounts to Sims on the dissolution of the partnership existing between them, and that the account in controversy was among them, and that Sims knew then and there that said account was paid or settled, you will find for the defendant."

These instructions should not have been given.   There was no evidence on which they could have been based.   The account of appellee in favor of appellants had not been collected.   Nothing had been paid on it.   Witherington stood charged on the books of appellee for lumber sold to and purchased by him for his own individual use.   The account against Witherington could not have been used as a set-off against the account in favor of the firm, and, even if it could, it did not operate to extinguish

or cancel the latter. This could be done only by agreement of the parties to each account (*Quinn* v. *Sewell*, 50 Ark. 380); and appellee could not ratify, adopt or confirm the act of Witherington in marking the firm account paid, so as to make it effectual after Sims had repudiated it. The greatest effect, if any, which could be given to the act of Witherington would be to treat it as an offer to release appellee from his indebtedness on the firm account if he would credit his account against Witherington with the amount thereof. To have availed himself of its benefits, the appellee should have taken advantage of it before it was withdrawn. As he did not do so, he could claim no benefit from it.

For errors in the instructions, the judgment of the circuit court is reversed, and the cause is remanded for a new trial.